Kent M. Bryan (Pro Se)
2 Argo Court
Broomfield, CO 80020
303-356-4416
Kbryan@swinerton.com
kentmbryan@yahoo.com

FILED

JAN 08 2026

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT M. BRYAN (Pro Se), ) | |
| Plaintiff, ) | Case No. 2:25-cv-01937-CKD (PS) |
| vs. ) | |
| TAHOE REGIONAL PLANNING AGENCY, ) | **Date:** February 18, 2026 |
| JULIE W. REGAN (EXECUTIVE DIRECTOR), ) | **Time:** 10:00 am |
| GRAHAM ST. MICHEL (GENERAL COUNSEL) ) | **Courtroom :** 24 |
| Defendants, ) | **Judge:** Honorable Carolyn K. Delaney |

## JOINT STATEMENT RE DISCOVERY DISAGREEMENT (PURSUANT TO LOCAL RULE 251(c)

**TABLE OF CONTENTS**
- **I. Certification of Meet and Confer Efforts (L.R. 251(b))** … Page 3
- **II. Nature of the Dispute (L.R. 251(c)(2))** … Page 3
  - Introduction: The Story of the Moving Target … Page 3
  - The Retroactive Authorization Trap and Legal Impossibility … Page 4
  - The Federal Permit Hierarchy Myth and the Jurisdictional Paradox … Page 4
  - A. The Core of the Pretext Claim (Factual and Technical) … Page 5
  - B. Legal Contradictions and Discriminatory Enforcement … Page 6
- **III. Positions of the Parties (L.R. 251(c)(3))** … Page 9
- **IV. Contested Issues (L.R. 251(c)(3))** … Page 10
  - **Issue 1:** Leave to Conduct Discovery Outside the Administrative Record … Page 10

JOINT STATEMENT 1

- o **Issue 2:** TRPA's Status as a State Actor and Constitutional Scrutiny ... Page 11
- o **Issue 3:** The Arbitrary Reversal and Jurisdictional Paradox ... Page 12
- o **Issue 4:** *Bryan I* and the Standalone Federal Path ... Page 13
- o **Issue 5:** Violation of the Disjunctive "OR" Mandate ... Page 15
- o **Issue 6:** Bad-Faith Defiance of the *Bryan I* Standard ... Page 16
- o **Issue 7:** Shifting Standards, Fair Notice, and Pretext ... Page 17
- o **Issue 8:** Withholding of Internal Communications and "Whole Record" ... Page 18
- o **Issue 9:** Depositions of Key TRPA Officials and Specialists ... Page 19
- o **Issue 10:** Production of Inconsistent Enforcement Data and Metadata ... Page 20
- **V. Specific Discovery Items Contested (L.R. 251(c)(4))** ... Page 22
- **VI. Requested Relief (L.R. 251(c)(5))** ... Page 24

**TABLE OF AUTHORITIES**
**Federal Cases**

- *Animal Defense Council v. Hodel*, 840 F.2d 1432 (9th Cir. 1988) ... Pages 9, 21–22
- *Bryan v. Tahoe Regional Planning Agency* (*Bryan I*), ECF No. 28 ... Pages 4–5, 8, 13, 16, 24
- *Camp v. Pitts*, 411 U.S. 138 (1973) ... Pages 9, 13
- *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) ... Pages 14, 18
- *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ... Pages 3, 9–10, 21
- *Dept. of Commerce v. New York*, 588 U.S. 265 (2019) ... Pages 6, 17, 24
- *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) ... Page 8
- *In re Subpoena Served Upon Comptroller of Currency*, 967 F.2d 630 (D.C. Cir. 1992) ... Pages 9, 21
- *Landgraf v. USI Film Products*, 511 U.S. 244 (1994) ... Page 18
- *Lands Council v. Powell*, 395 F.3d 1019 (9th Cir. 2005) ... Page 13
- *League to Save Lake Tahoe v. TRPA*, 507 F.2d 517 (9th Cir. 1974) ... Pages 9, 13
- *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322 (9th Cir. 1982) ... Page 18
- *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29 (1983) ... Page 13
- *Portland Audubon Soc'y v. ESC*, 984 F.2d 1534 (9th Cir. 1993) ... Page 8
- *S&M Inv. Co. v. TRPA*, 702 F. Supp. 1471 (E.D. Cal. 1988) ... Page 12
- *United States v. Woods*, 571 U.S. 31 (2013) ... Pages 7, 14

**Federal Statutes & Rules**

- Tahoe Regional Planning Compact, Article VI(j)(5) ... Pages 6, 21, 24
- Local Rule 251, Eastern District of California ... Pages 1, 3, 22, 24

**Other Authorities**

- TRPA Code of Ordinances § 84.3.3.D.3.b.ii ... Pages 4, 6, 16
- Administrative Record (AR) 001104 ... Pages 5, 13, 20
- Administrative Record (AR) 001171 ... Pages 5–6, 18
- Privilege Log PR057–PR063 ... Pages 7, 19, 24

JOINT STATEMENT 2

## II. NATURE OF THE DISPUTE (L.R. 251(c)(2))

Plaintiff contends discovery is necessary because the Administrative Record is incomplete and contrived, creating a "condition impossible" that violates the Court's prior ruling in *Bryan I*. The February 25, 2021 CSLC Letter confirmed that lakebed leases are available only to littoral owners and that the mooring location was already under lease to another party. Despite this, TRPA demanded a CSLC lease from Plaintiff, a non-littoral owner, while ignoring the alternative federal path expressly allowed by Code §84.3.3.D.3.b.ii and affirmed in *Bryan I*.

Plaintiff obtained a site-specific NWP 10 Verification from USACE, yet TRPA arbitrarily rejected it, claiming federal authorization has "no authority"—a position contradicted by TRPA's own internal records (AR001104). Privilege Log PR057 shows TRPA drafted a denial letter months before reviewing evidence, confirming a "verdict-first" approach. Discovery is required to examine this predetermination, the unexplained 93.8-foot geodetic shift used to "lose" the buoy, and internal communications moved "off written channels." These facts demonstrate a significant mismatch between TRPA's stated rationale and its internal actions, triggering the bad-faith exception under *Overton Park* and *Dept. of Commerce v. New York*.

Defendants argue review is limited to the Administrative Record under Compact Article VI(j)(5) and deny any reversal or bad faith. They assert the record supports TRPA's decision and that extra-record discovery is unwarranted.

**Defendants' Position on the Scope of Review** Defendants maintain that judicial review is strictly confined to the Administrative Record under Compact Article VI(j)(5). A federal court's review is confined to the administrative record before TRPA at the time of its final decision, and the court may not consider post-hoc evidence or substitute its judgment for that of the Agency.

JOINT STATEMENT 3

The court's task is limited to determining whether TRPA acted within its authority under the Compact and whether its decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. So long as the record demonstrates a rational connection between the facts found and the decision made, TRPA's denial must be upheld, even if the court might have reached a different result in the first instance. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973); abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977) (*"Overton Park"*); *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 507 F.2d 517, 520–21 (9th Cir. 1974).

## III. Positions of the Parties (L.R. 251(c)(3))

**Plaintiff's Position:**

- **Waiver of Record Rule:** TRPA waived the "record-only" rule by injecting its own extra-record declarations and NearMap imagery into this litigation.

- **Strong Showing of Bad Faith:** Discovery is mandated under *Overton Park* and *Dept. of Commerce* due to objective evidence of pretext, including pre-drafted denials, a 93.8-ft geodetic shift, and the suppression of curative USACE documentation.

- **In-Camera Review:** Privilege cannot shield administrative pretext; in-camera review is necessary to uncover the true rationale behind the "Jurisdictional Paradox".

- **Constitutional Violations:** TRPA's reversal of its own "Federal Path" interpretation creates a circular legal impossibility violating the APA and Supremacy Clause.

- **Diminished Deference After Bryan I:** TRPA's interpretation of Code §84.3.3.D.3.b.ii was already adjudicated in Bryan I, where the Court confirmed compliance via authorization from "either an applicable state or federal agency." Under the law-of-the-case doctrine and

JOINT STATEMENT 4

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), agency deference applies only if a regulation is genuinely ambiguous and the interpretation reflects fair and considered judgment, not a post-hoc rationalization. TRPA's attempt to reinterpret "OR" as "AND" after Bryan I fails these tests and is not entitled to deference. This arbitrary reversal violates the APA and the Fair Notice Doctrine (*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012)).

**Defendants' Position:**

• There is no "waiver of record rule." Plaintiff identifies no authority holding that the mere possibility that an affirmative defense could require factual development after the administrative decision is reviewed waives the record-review rule. To the contrary, courts require a concrete showing that extra-record evidence is necessary to resolve an issue currently before the Court. There is also no authority recognizing an "administrative pretext" exception to the attorney-client privilege. Courts have repeatedly rejected attempts to recast disagreement with an agency's reasoning as a basis to invade privileged communications or conduct motive-based discovery. *Overton Park* is a warning against motive-based discovery, not a license for it.

• Plaintiff disagrees with TRPA's legal position and conclusions and has presented no evidence of bad faith. Plaintiff's motion relies heavily upon the misrepresentation that TRPA denied the permit application because it was unable to locate a buoy float in the location identified by Plaintiff *after* the Complaint was filed. The Answer raised the issue so that if the Court determines that a NWP 10 meets the standards of the TRPA Code under the TRPA Code and the *Bryan I* decision, the affirmative defense will come into play. The "existence" of the buoy was not a basis for denial of the application.

JOINT STATEMENT 5

- Plaintiff cites no authority to support his request that the Court override attorney-client or deliberative process privileges. As noted below, even in cases where extra-record evidence is allowed by a court, there is no "waiver" of the attorney-client privilege.

- TRPA has not "reversed" a "Federal Path" interpretation and has never taken the position that a general federal permit would satisfy the TRPA Code. Plaintiff points to information in the record and claims that the *current record* supports his arguments related to preemption. This undermines Plaintiff's claim that the record is insufficient to support judicial review.

**IV. Contested Issue: Leave to Conduct Discovery (L.R. 251(c)(3))**

**Issue 1: Whether Plaintiff may conduct limited, targeted discovery outside the Administrative Record (AR) to address bad faith, pretext, and an incomplete record.**

**Plaintiff's Contentions:** Judicial review must extend beyond the AR because there is a strong showing of bad faith and improper behavior. Under *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), such a showing triggers an exception to the record-only rule. The factual disputes contained in Exhibits B, C, D, F, and H satisfies the standard for clear evidence of bad faith. These documents prove the Agency had the means to tie the buoy to the parcel via the PCN coordinates (Exhibit B) and knew the anchor was the regulated structure per its own permitting definitions (Exhibit C), yet chose to manufacture a "non-existence" finding. Furthermore, discovery is justified by the "significant mismatch" between the Agency's stated reason and its actual motive pursuant to *Department of Commerce v. New York*, 588 U.S. 265 (2019). This showing proves the Agency's justification runs counter to the evidence before it, violating the requirement for a fair and honest administrative process.

**Defendants' Contentions:** Extra-record discovery is permissible only in the most extraordinary circumstances. Plaintiff's allegations do not remotely approach the threshold showing of clear,

JOINT STATEMENT 6

non-speculative evidence required. Nothing in the record "ties the buoy to the parcel", and USACE never made any findings regarding whether Plaintiff's non-littoral parcel was "tied" to the claimed buoy at the time the buoy was placed. The current record contains all USACE documents relating to the claimed buoy, and there is no documentation of USACE finding an association between Plaintiff's parcel and the claimed buoy. AR 637-918. It is also critical to the Court's analysis that the fact that a buoy was not present at the time the Answer was filed is *not* the reason the permit application was denied. TRPA has never made an administrative "non-existence finding." The application was denied because the general federal permit does not tie the non-littoral parcel to the claimed buoy as required under the TRPA Code. TRPA reviewed the USACE documents, and Plaintiff provided coordinates (also in the record), but there is no evidence that USACE verified the existence of a buoy, and USACE warned Plaintiff that coverage under a general permit does not grant property rights and that all other state and local permitting requirements continue to apply. *See* AR 565. All of this is in the record. Plaintiff's argument is that he disagrees with the legal conclusions made by TRPA in its decision to deny the permit application. That is not sufficient showing.

**Plaintiff's Final Rebuttal**: TRPA's attack on Plaintiff's standing in Dkt. 17 is a demonstrable sham refuted by the Agency's own evidence. While TRPA's attorneys claim no buoy exists , their own **Exhibit B (April 19, 2024 USACE Letter)** explicitly confirms that **"the property appears to have had a single buoy in place prior to December 18, 1968"**. TRPA's attempt to subrogate Plaintiff's standing by using a **93.8-foot geodetic error** to ignore the subsurface anchor—which is the "structure" regulated under federal law, See Exhibit C, is a **"contrived reason"** designed to avoid judicial review. The Agency cannot present a federal letter confirming a 56-year-old buoy as **"Exhibit B"** and then file the **Phillips and Miller**

JOINT STATEMENT 7

**Declarations** claiming that same buoy is a fiction to challenge **Article III standing**. Defendants' characterization of this as a "purely legal" disagreement is a **post-hoc rationalization** used to shield a manufactured factual dispute. TRPA has waived the "record-only" rule by injecting extra-record declarations (**Phillips/Miller**) and **NearMap imagery**, all generated after the permit denial specifically to attack Plaintiff's standing. Under *Portland Audubon Soc'y v. ESC*, the Agency cannot use the Administrative Record as a "shield" after using outside contentions as a "sword" to challenge factual standing. The record is **"contrived"** because it omits site-specific USACE evidence that the Board refused to review. TRPA's assertion in Dkt. 17 that USACE "never verified" the buoy is a **factual falsehood** directly refuted by the **NWP 10 Verification (Exhibit G)**, which constitutes site-specific federal authorization issued following a formal federal review of the PCN coordinates. This permit is **validated** and serves as the formal federal confirmation of the buoy's location and existence; TRPA's claim that USACE "never made findings" is a post-hoc attempt to ignore a valid federal instrument. As proven by the **February 25, 2021 CSLC Letter (AR1005–AR1007)**, the Agency previously identified the buoy with precision using the correct coordinates. Even if Plaintiff submitted decimal-degree coordinates in the PCN, TRPA had the original buoy file and accurate coordinates (confirmed by CSLC). The Agency's failure to reconcile these data points and reliance on inexact coordinates to justify denial demonstrates a **deliberate choice**, not an innocent error. Discovery is mandatory to investigate the **93.8-foot geodetic shift** utilized to manufacture a "non-existence" finding while ignoring the permanent subsurface anchor. This **"significant mismatch"** between TRPA's stated rationale and the facts in its possession, including the **validated federal permit** triggers the exception recognized in *Dept. of Commerce v. New York*. Under *Dept. of Commerce*, courts expand review when an agency's stated rationale is contradicted by internal evidence. TRPA's

JOINT STATEMENT 8

reliance on flawed coordinates while ignoring accurate, validated data creates a mismatch that warrants discovery. Finally, the **January 9, 2025 draft denial (PR057–PR063)** is objective evidence of predetermination. This document alone justifies in-camera review because it shows TRPA scripted a denial before evaluating Plaintiff's evidence, a classic indicator of bad faith under *Overton Park*. Plaintiff's evidence meets the threshold for a strong showing of bad faith

**Issue 2: Whether TRPA's status as a state actor necessitates discovery to resolve Due Process and Equal Protection claims.**

**Plaintiff's Contentions:** TRPA operates under color of state law for purposes of constitutional claims. Federal courts have held that TRPA's permitting decisions are reviewable under the APA and subject to constitutional scrutiny. Under *S&M Inv. Co. v. Tahoe Reg'l Planning Agency*, 702 F. Supp. 1471, 1472 (E.D. Cal. 1988), constitutional claims arising from selective enforcement and improper behavior necessitate discovery into internal and "off-written channels" communications used to coordinate an administrative blockade.

**Defendants' Contentions:** This appears to be a statement regarding the type of legal review TRPA's permit denials are subject to. The law speaks for itself. The decision in *S&M Inv. Co. v. Tahoe Reg'l Planning Agency*, 702 F. Supp. 1471 (E.D. Cal. 1988) did not address discovery standards or issues of record review. Information contained in TRPA's Answer regarding the location of the claimed buoy was not a "finding" made under the color of state law. It is a good faith factual observation regarding the conditions at the time the Answer was filed, which is consistent with the record.

**Plaintiff's Final Rebuttal:** TRPA's status as a state actor triggers a duty of fairness that cannot be fulfilled by a "contrived" record. Defendants' attempt to dismiss this avoids the reality that they used the color of law to manufacture a factual dispute via a 93.8-foot coordinate error. This

JOINT STATEMENT 9

deliberate reliance on flawed data to deny a permit while ignoring underwater anchor photographs and USACE verification constitutes a violation of Due Process that requires discovery to resolve.

**Issue 3: Whether the Arbitrary Reversal and Jurisdictional Paradox invalidate TRPA's denial rationale.**

**Plaintiff's Contentions**: TRPA's rejection of the federal NWP 10 Verification constitutes Conflict Preemption because a federal permit has "no less pre-emptive effect than Federal Statutes". Under the Supremacy Clause, TRPA is barred from imposing conflicting state conditions, such as a CSLC Lease, on a valid federal authorization. This arbitrary reversal of the Agency's prior stance creates an illegal obstacle to the objectives of Congress.

**Defendants' Contentions:** Plaintiff's attempt to justify discovery by invoking "preemption" misunderstands both the nature of Compact review and the limited role of factual development in this case. Whether TRPA's permit denial is preempted presents, at most, a purely legal question that turns on the text of the Tahoe Regional Planning Compact and governing federal law, not on facts outside the administrative record. Legal theories—however styled—do not expand the scope of review or authorize extra-record discovery absent a strong showing of bad faith, improper motive, or failure to compile the record, none of which exists here. Federal courts reviewing TRPA decisions may consider legal arguments challenging the Agency's authority, but those arguments are resolved on the existing record and the governing law, not through discovery. Allowing discovery here would improperly convert a narrow Compact-based administrative review into de novo litigation, a result the Supreme Court and the Ninth Circuit have repeatedly rejected. See *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Lands Council v. Powell*,

JOINT STATEMENT 10

395 F.3d 1019, 1029–30 (9th Cir. 2005); *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 507 F.2d 517, 520–21 (9th Cir. 1974).

The respective State Lands Commissions have exclusive jurisdiction over the sovereign lakebed lands. See Nev. Rev. Stat. § 321.595 and Cal. Public Resources Code § 6301. The power to grant permission to place something on the bed of the Lake is exclusively within the authority of these agencies, and they charge annual fees for the land leases to those who maintain buoy blocks on the bed of the Lake. USACE stated repeatedly to Plaintiff that coverage under a general navigation permit – NWP 10 – did not relieve a buoy owner from all other state and local permitting requirements. USACE has been clear about its jurisdiction from the beginning, and Plaintiff refuses to accept that the NWP 10 simply does not authorize placement of a buoy block on the bed of the Lake. The jurisdiction of the respective federal agencies is a legal issue and cannot be the basis for allowing extra-record discovery. Further, the Plaintiff's arguments of "jurisdictional paradox" are belied by the existing evidence in the record. On June 7, 2024, USACE staff explained to Plaintiff that a USACE permit could only verify a structure's existence and if Plaintiff wished to tie the claimed buoy to a non-littoral property, he would need to find another way to verify. See AR 823-824. The record shows no "reversal."

The record includes reference to an individual permit issued by USACE in February of 1981, purporting to allow a littoral owner to "place" a buoy. The permit states that it was issued under Section 10 of the Rivers and Harbors Act and was to allow for the "work" of placing the buoy, and included a site plan showing the littoral parcel, and a diagram of the anchor block. AR 1116. Littoral owners are allowed to place a new buoy with a TRPA permit. (Code section 84.3.2.) When a new buoy is placed, the owner may obtain general permit coverage from USACE for the new structure. The TRPA Code does not provide for any "new" non-littoral

JOINT STATEMENT 11

buoys. Non-littoral owners claiming an existing buoy are required to show that the placement of the existing buoy had been authorized to a specific non-littoral owner. (Code section 84.3.3.D.3.b.ii.) As recognized in *Bryan I*, the approval must tie the non-littoral parcel to the claimed buoy at the time the buoy was placed. The USACE 1981 authorization for "work" to place a new buoy and the existing buoy situations are not similar, and Plaintiff is simply confused about what the 1981 permit example represents.

**Plaintiff's Final Rebuttal:** Evidence of administrative dishonesty exists in **AR001104**, where TRPA staff explicitly acknowledged in a slide presentation that "USACE issues permits for buoy placement," yet Mr. Miller later admitted on the record that there is "no way for a non-littoral owner to permit a buoy". This **post-hoc rationalization** asserting USACE has "no authority" after previously admitting they do, proves TRPA is enforcing an **illusory standard** designed to guarantee denial. This defiance of the Court's finding that the Code is satisfied by authorization from **"either an applicable state or federal agency" (ECF No. 28, Page 12, Lines 15–17)** provides the "strong showing of bad faith" required for discovery under *Motor Vehicle Mfrs. Ass'n v. State Farm, 463 U.S. 29, 43 (1983).*

**Issue 4: Whether *Bryan I* established the Federal Path as a standalone requirement and whether TRPA's rejection of the NWP 10 constitutes bad faith.**

**Plaintiff's Contentions:** TRPA's refusal to allow a 'cure' via the NWP 10 Verification violates the **standalone federal path** established in *Bryan I*, which requires only **'permission to anchor from an applicable... federal agency' (ECF No. 28, Page 13, Lines 3–5)**. By constantly changing the definition of 'valid authorization' and then asserting a total lack of federal jurisdiction, TRPA created a 'circular requirement' that made it impossible for Plaintiff to be compliant.

JOINT STATEMENT 12

**Defendants Contentions:** The decision in *Bryan I* did not make any findings or conclusions regarding a federal general permit being a "standalone path" to meeting the Code requirements. This is a purely legal issue, and the Court will interpret the previous decision and the record in this case, which addresses this issue at length. The decision in *Bryan I* noted that the CSLC had notified Plaintiff that the buoy he claimed was in trespass on State lands and the Court concluded that Plaintiff had "no cognizable property interest in his application to locate a buoy on lands belonging to the State of California." *See* AR 1005 to 1007. Theres is nothing in the decision regarding a "standalone federal path" to "cure" this lack of a cognizable property interest. The record here shows that TRPA acknowledges USACE's jurisdiction over general navigational permits but concludes that the general permit is not authorization to anchor and does not tie any particular buoy to any particular non-littoral parcel. There is no assertion of a "total lack of federal jurisdiction," as USACE has explicit jurisdiction over navigation and dredge and fill activities, which TRPA acknowledges in the record. The general permit simply does not meet the requirements of the Code for permission to anchor a non-littoral buoy. This disagreement over applicable law does not justify discovery of extra-record evidence.

**Plaintiff's Final Rebuttal:** TRPA is attempting to rewrite the law by ignoring the **Plain Meaning Rule**. The word "or" in TRPA Code § 84.3.3.D.3.b.ii is disjunctive, creating alternative paths to compliance. Under *United States v. Woods, 571 U.S. 31, 45 (2013),* the ordinary meaning of "or" represents an alternative. By rejecting a federal authorization, TRPA is converting "OR" into "AND," creating a "Jurisdictional Paradox" that functions as a total blockade. This shifting interpretation is an "unfair surprise" that violates the Fair Notice Doctrine established in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012). An agency cannot "interpret" its way around a court-sanctioned standard to impose a new "disability" on a

JOINT STATEMENT 13

party that relied on the prior rules. Furthermore, under *Montgomery Ward & Co. v. FTC*, 691 *F.2d 1322 (9th Cir. 1982)*, TRPA is barred from this abrupt change in course that ignores Plaintiff's 16-year reliance on the federal path. Discovery is required to expose the pretext of this requirement, which staff admitted was "unfeasible" in May 2025.

**Issue 5: Whether TRPA's rejection of the NWP 10 Verification as "permission" violates the disjunctive "OR" mandate and improperly conflates "Authorization" with "Property Rights."**

**Plaintiff's Contentions:** TRPA's attempt to conflate 'authorization' with 'property rights' is a legal fiction. The Court explicitly noted the Code is satisfied by authorization from **'either an applicable state or federal agency'** (ECF No. 28, Page 12, Lines 15–17), making no mention of a mandatory state-issued property instrument.

**Defendants' Contentions:** Interpretation of an agency's own regulation is a question for the Court. *Auer v. Robbins*, 519 U.S. 452, 461 (1997). This is a legal issue and does not support a request for discovery. TRPA requires "proof that the non-littoral owner (or predecessor), in fact, received permission from a state or federal agency for the placement of the buoy. (Code section 84.3.3.D.3.b.ii.)" Plaintiff has only been able to show that USACE acknowledges a buoy's existence but has not been able to show that he (or his predecessor in interest) received permission to place the buoy. *See* AR 979. Plaintiff disagrees that he must show that he received authorization to place the buoy. USACE stated to Plaintiff that it did not grant property rights or exclusive privileges, and that all other state and local permit requirements would need to be met. *Id.* Plaintiff's argument that NWP 10 *did* grant property rights and exclusive privileges is a legal argument, and the record contains ample information on this issue. There is no basis for discovery where Plaintiff is unhappy with the law.

JOINT STATEMENT 14

**Plaintiff's Final Rebuttal: The Agency's own record at (AR1005–AR1007)** the **February 25, 2021, CSLC Letter** provides definitive proof that TRPA manufactured a "**condition impossible**". CSLC explicitly informed Plaintiff that lakebed leases "**shall generally only be issued to littoral upland owners**" and that the mooring location was already "**under lease to the littoral landowner**". By demanding a state instrument that their own partner confirms is **legally unavailable** to non-littoral owners, TRPA is attempting to retroactively impose a "littoral-only" requirement in defiance of *Bryan I*. This creates a **Legal Impossibility**, as the Court ruled the Code is satisfied by authorization from "**either** an applicable state **or** federal agency". TRPA cannot use the CSLC as a proxy to override this **standalone federal path**. Furthermore, the Agency denied Plaintiff an opportunity to cure by switching the required "cure" from a federal Individual Permit to an outright denial of all federal jurisdiction, a claim refuted by **AR001104**. This "**significant mismatch**" between the Code's disjunctive "**OR**" and the Agency's conjunctive "**AND**" blockade, combined with the use of a **93.8-foot geodetic error** to "lose" a buoy the CSLC identified with precision in 2021, provides the strong showing of bad faith necessary for discovery under *Dept. of Commerce* .

**Issue 6: Whether TRPA's refusal to acknowledge the USACE NWP 10 as "permission to anchor" constitutes a bad-faith defiance of the *Bryan I* standard.**

**Plaintiff's Contentions:** Plaintiff has met the specific standard defined by the Court: obtaining '**permission to anchor from an applicable state or federal agency**' (ECF No. 28, Page 13, Lines 3–5). TRPA's refusal to recognize the site-specific NWP 10 Verification (Exhibit G) as such permission is a defiance of the standard set in ECF No. 28.

**Defendants' Contentions:** Interpretation of *Bryan I* is a legal issue. The NWP 10 is not "site-specific" and the only information in the record regarding the location of the claimed buoy is

JOINT STATEMENT 15

what Plaintiff chose to provide to USACE. There is no evidence in the record showing that USACE confirmed the existence of a buoy at that location, and no evidence that USACE "tied" the claimed buoy to Plaintiff's non-littoral parcel. The *Bryan I* decision speaks for itself. Plaintiff cites no legal authority in support of the idea that if he is unhappy with the way TRPA is interpreting that decision, he should be allowed to do extra-record discovery. Nor could he, because such authority does not exist..

**Plaintiff's Final Rebuttal:** TRPA is not merely "interpreting" the law; it is actively suppressing federal confirmation in defiance of the Court's mandate. **TRPA's claim that an NWP 10 Verification is not "site-specific" is a deliberate misrepresentation of federal law.** Under *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, federal regulatory actions carry the full weight of federal law. TRPA is actively suppressing federal confirmation (Exhibit B) that **"no further DA authorization is required"** because the structure was **"previously authorized"** under federal law. This **"significant mismatch"** between the validated federal permit and the Agency's explanation mandates discovery under *Dept. of Commerce v. New York*. TRPA's distinction between "general" and "individual" permits is an **arbitrary barrier** with no basis in federal law; under *de la Cuesta*, federal regulatory actions carry the same preemptive weight as statutes. While the CSLC may have had a general leasing process, TRPA cannot retroactively use a **state property standard** to nullify the **standalone federal path** established in *Bryan I*, which requires authorization from **"either** an applicable state **or** federal agency". The Board's refusal to review the USACE email during the TRPA Governing Board Meeting in May of 2025, which clarified that the NWP 10 **is** "permission to anchor," proves a "significant mismatch" between the evidence and the Agency's explanation, mandating discovery.

JOINT STATEMENT 16

**Issue 7: Whether TRPA's shifting standards demonstrate bad faith and pretext.**

**Plaintiff's Contentions:** TRPA initially represented that a USACE Section 10 permit would satisfy the Code, yet they reversed this position without explanation once Plaintiff complied. This "moving-target" approach violates the APA and supports discovery into bad faith under *Overton Park.*

**Defendants' Contentions:** TRPA has never taken the position that a general permit applicable to any structure in Lake Tahoe, a general permit that does not tie a specific non-littoral parcel to a specific existing buoy, would satisfy the requirements of the Code. Plaintiff cites to no authority or record document to support this claim. TRPA requires a non-littoral applicant to show proof of permission to anchor. The CSLC requires a lease for all structures in Lake Tahoe that occupy any portion of the lakebed. As Plaintiff himself notes, CSLC determined *before* the *Bryan I* complaint was filed that the location of Plaintiff's claimed buoy is under a CSLC lease to a littoral landowner. That is one of the facts supporting the Court's determination in *Bryan I* that Plaintiff has no cognizable property interest in the claimed location. There is nothing in the law in general or the *Bryan I* decision stating that a general navigational permit that is not site-specific allows a party to usurp existing private or State property interests. The notion of a "standalone federal path" is without any basis.

Plaintiff's disagreement with TRPA's legal position is not evidence of "bad faith", it is simply a disagreement regarding the law. Every lawsuit includes such disagreements, and the rational connection between the facts and TRPA's decision to deny Plaintiff's permit application is set forth in detail in the AR.

**Plaintiff's Final Rebuttal:** The Agency's "never" claim is a factual falsehood; **Exhibits B and G** explicitly tie Plaintiff's specific parcel to the buoy. The **February 25, 2021 CSLC letter**

JOINT STATEMENT 17

(**AR1005–AR1007**) confirms the Agency used the correct coordinates to identify the mooring location. TRPA later "lost" the buoy via a **93.8-foot geodetic shift** to avoid acknowledging the **NWP 10 Verification**. This shifting interpretation is an "unfair surprise" that violates Due Process under *Christopher v. SmithKline Beecham Corp.*. Furthermore, TRPA's demand violates the "presumption against retroactivity" under *Landgraf v. USI Film Products*, as an agency cannot retroactively impose a modern state lease requirement—which TRPA knows is a **Legal Impossibility** for non-littoral owners on a structure placed prior to 1968 when no such standard existed and the Agency itself lacked regulatory authority. Crucially, during the May 2025 hearing, Agency staff admitted on the record that **"three buoys would be okay in theory"** at the location (**AR001171 at 228:28**). This admission, combined with the admission that there is **"no way for a non-littoral owner to permit a buoy"** (**AR001171 at 232:30**), proves the "no tie" argument is a cover for a pre-determined denial scripted in the **January 9th Draft Denial (PR057)**. Under *Montgomery Ward & Co. v. FTC*, TRPA is barred from this abrupt and prejudicial change in course

**Issue 8: Whether TRPA's withholding of 100+ pages of internal communications prevents the Court from reviewing the "Whole Record."**

**Plaintiff's Contentions:** The Administrative Record is inadequate and "contrived" because the withholding of over 100 pages of internal communications prevents the Court from reviewing the "whole record" as mandated by the Bi-State Compact. Plaintiff seeks *in camera* review of the January 9th Draft Denial (**PR057**) and associated metadata to determine if the Administrative Record is a post-hoc rationalization. Furthermore, Plaintiff seeks targeted discovery to test the veracity of the standing claims TRPA raised in Dkt. 17.

**Defendants' Contentions:** The requested internal communications are subject to the attorney-

JOINT STATEMENT 18

client and/or deliberative process privileges as set forth in the privilege log. Plaintiff bears the burden of making a specific, non-speculative threshold showing that the materials are not privileged; allegations of "pretext" or disagreement with an agency's reasoning do not satisfy this standard. Additionally, there is no basis for Plaintiff's claim that the entire administrative record is a "post hoc rationalization" because on January 9, 2025, the privilege log includes a message regarding a draft denial letter. The record is rife with communications from TRPA and USACE in 2024 stating that a USACE general permit would not serve to tie the non-littoral parcel to the claimed buoy under TRPA Code. *See* AR 806, 823. The record shows that the position did not "shift" and the existing record will support judicial review of this issue.

**Plaintiff's Final Rebuttal:** Administrative privilege cannot shield a **procedural artifice** or a **post-hoc rationalization**. TRPA waived the record-only rule by injecting the extra-record declarations of Mr. Miller and Mr. Phillips into this litigation specifically to attack Plaintiff's standing . Having used this outside evidence as a **"sword,"** TRPA cannot now use the Administrative Record rule as a **"shield"** to block discovery and *in camera* review intended to test the veracity of those same factual claims. The record is demonstrably "contrived" because the **Exhibit H** request to move discussions **"off-written channels"** explains the absence of records regarding the 93.8-foot geodetic error. The **January 9th Draft Denial (PR057)** constitutes a "significant mismatch" between public process and internal reality, necessitating review to ensure the "whole record" mandate of Compact Article VI(j)(5) is satisfied

**Issue 9: Whether Plaintiff may depose key TRPA officials and specialists regarding institutional policy reversals and technical misconduct.**

**Plaintiff's Contentions:** Under the *Overton Park* framework, discovery beyond the administrative record, including probing the "mental processes" of decision-makers is permitted

JOINT STATEMENT 19

upon a "strong showing of bad faith". Plaintiff seeks to depose Executive Director Julie W. Regan, General Counsel Graham St. Michel, Matthew Miller, Brenden Phillips, and a CSLC Rule 30(b)(6) designee.

**Defendants' Contentions:** As noted above, Plaintiff cites to no authority that would allow him to pierce the attorney-client privilege. Nor does Plaintiff meet the showing required to obtain extra-record discovery. Disagreement regarding an agency's legal conclusions does not come close to approaching the extraordinary showing that is required under *Overton Park*. TRPA objects to these depositions as an improper attempt to probe the "mental processes" of agency officials and a violation of the attorney-client and deliberative process privileges.

**Plaintiff's Final Rebuttal:** Privilege cannot shield a **procedural artifice**. TRPA waived the record-only rule by injecting the extra-record declarations of Mr. Miller and Mr. Phillips into this litigation specifically to attack Plaintiff's standing. Having used this outside evidence as a **"sword,"** TRPA cannot now use the Administrative Record rule as a **"shield"** to block depositions intended to **test the veracity** of those same factual claims. Discovery is mandatory to reconcile the contradictory admissions at **AR001171** regarding capacity **[at 228.28]** and the inability for non-littoral owners to permit a buoy **[at 232:30].**

**Issue 10: Whether TRPA must produce internal communications and data related to inconsistent enforcement and technical metadata.**

**Plaintiff's Contentions:** Plaintiff seeks production of internal communications from January 1, 2018, related to discriminatory enforcement (Gould and Sherman), raw GPS metadata, and legal analyses. The volume of withheld materials, over 100 pages, requires, at minimum, an in camera review.

**Defendants' Contentions:** The record includes hundreds of pages of documentation and

JOINT STATEMENT 20

evidence that was before the Agency at the time it made its decision. Plaintiff submitted documents regarding the "Gould" and "Sherman" buoys during the administrative appeal and TRPA responded during the appeal hearing, explaining that "Sherman" and "Gould" had all been held to the same standard. See AR 1107, 1113 and 1114. Plaintiff had an opportunity to submit what he believed to be relevant documents relating to the enforcement action regarding the "Gould" and "Sherman" buoys, both of which were removed from the Lake because those asserting "ownership" also could not satisfy the second prong of Section 84.3.3.D.3.b.ii. Plaintiff cites no authority that would allow extra-record discovery or in camera of review of documents that were not before the Agency at the time of its decision.

Plaintiff argues that TRPA somehow "conferred" a "recognizable property interest" on others, showing "pretext." Plaintiff confuses the property interest the Shermans and the Goulds claimed in the buoys at issue in those enforcement actions (including the anchor, chain, and float) with a cognizable property interest in a buoy's *location*. CLSC "took title" to these physical objects and removed them from the Lake because Sherman and Gould, like Plaintiff, could not satisfy the second prong of Code section 84.3.3.D.3.b.ii. AR 957-960.

**Plaintiff's Final Rebuttal:** TRPA's inconsistent enforcement and selective conferral of "recognizable interests" is demonstrated by its handling of the Sherman matter, which serves as objective proof of pretext warranting targeted discovery. The **Sherman Staff Report** (October 19, 2023) confirms that TRPA and the California State Lands Commission (CSLC) treated the Shermans' buoys as having a recognizable interest sufficient to trigger formal Commission action to "take title" to the buoy and authorize its removal. Despite the Shermans' parcel being non-littoral and categorically ineligible for a buoy permit under **Code §84.3.3.D.3.b.ii**, TRPA processed their application for over a year and coordinated with CSLC to assign title, explicitly

JOINT STATEMENT 21

stating: "Authorize the Executive Officer or designee to take title to a buoy... previously owned by the Shermans" (Sherman Staff Report, p. 4). This treatment stands in stark contrast to TRPA's position toward Plaintiff, who presented superior evidence, a validated **NWP 10 Verification**, accurate coordinates confirmed by CSLC (**AR1005–AR1007**), and historical proof of buoy existence predating 1968, yet was denied recognition outright. TRPA imposed a "legal impossibility" standard requiring a CSLC lease that CSLC itself confirms is unavailable to non-littoral owners, demonstrating discriminatory enforcement in violation of the APA and Equal Protection principles. The **January 9th Draft Denial (PR057–PR063)** provides objective evidence of predetermination, requiring discovery to clarify this **"verdict-first" process**. TRPA's current litigation stance that USACE permits are not "authorizations" is a pretextual justification directly refuted by its internal records at **AR001104**. Furthermore, the staff request to move discussions **"off written channels" (Exhibit H)** strongly suggests a deliberate attempt to avoid documenting the true rationale for the blockade. Discovery into the **raw GPS metadata** is essential to prove the Agency utilized a **93.8-foot coordinate error** to manufacture a "non-existence" finding in defiance of the Court's standard for **"permission to anchor from an applicable... federal agency"** (*Bryan I*, ECF No. 28). This inconsistency exhibits a "significant mismatch" with internal actions, warranting extra-record discovery under ***Dept. of Commerce v. New York*** and Motor Vehicle Mfrs. Ass'n v. State Farm. TRPA cannot use the Administrative Record as a "shield" after wielding extra-record declarations as a "sword" to attack standing. Discovery is essential to uncover improper behavior and ensure meaningful judicial review.

**V. Defendant's Position on Exception to the Administrative Record Rule and the Need for Discovery.**

JOINT STATEMENT 22

Plaintiff moves for permission to conduct discovery, specifically to depose General Counsel and senior TRPA staff and to obtain (and/or gain in camera review) of documents that are subject to the attorney-client and deliberative process privileges. Plaintiff's attempt to show "bad faith" reveals that the parties have the typical disagreement between parties in an administrative review case: competing views about the application of the law to the facts. All of this can be reviewed by the Court on the complete record that has been lodged. Dkt. No. 15.

Courts are particularly reluctant to permit discovery directed at agency counsel, including requests for in camera review of privileged communications, because such discovery intrudes on protected legal advice and improperly probes the mental processes of agency decisionmakers. Absent a concrete, document-specific showing of extraordinary circumstances – which Plaintiff has not made – courts routinely deny such requests. This principle is especially important in record-review cases, where judicial review is confined to the administrative record and privilege serves a critical role in preserving candid legal advice to the agency. *See In re United States*, 590 F.3d 1305, 1310–11 (Fed. Cir. 2009); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987). Plaintiff's desire to depose General Counsel and staff, and categorical request for in camera review of communications between TRPA staff and counsel fails to meet the threshold required for discovery and should be denied.

## VI. SPECIFIC DISCOVERY ITEMS CONTESTED (L.R. 251(c)(4) DETAILS)

**A. Targeted Depositions (Factual Veracity)** Plaintiff seeks to depose the following individuals to test the **veracity** of the extra-record declarations TRPA voluntarily injected into this litigation to challenge Plaintiff's standing:

- **Matthew Miller & Brenden Phillips**: Limited to the technical basis for the **93.8-foot geodetic shift**, the selection of **NearMap** imagery over official buoy files, and the physical boat crew findings that contradict **Exhibit B**.

- **Julie W. Regan & Graham St. Michel**: Limited to the **January 9th Draft Denial (PR057)** and the institutional coordination with CSLC regarding the "Legal Impossibility" of state leases for non-littoral owners.

- **CSLC Rule 30(b)(6) Designee**: Limited to **Exhibit H** "off-written channels" coordination and the 2021 precision identification of the buoy location.

**B. Document Production (Metadata focus)** Plaintiff seeks production of the following targeted items to resolve the "significant mismatch" in the record:

- **GPS Metadata**: Raw coordinates and software settings used by TRPA to generate the "non-existence" findings in August 2025.

- **PR057–PR063 (Draft Denial)**: Full metadata for the January 9, 2025, draft to establish the timing of the pre-determined denial.

- **Exhibit H Records**: Any internal communications (including text/mobile) used to move coordination "off-written channels" regarding the **April 19, 2024 USACE Letter**.

## VII. REQUESTED RELIEF (L.R. 251(c)(5))

Plaintiff respectfully requests that the Court grant the following relief to ensure a review of the "Whole Record" as mandated by **Compact Article VI(j)(5)** and to address documented administrative pretext:

- **Targeted Discovery on Standing and Factual Veracity**: Grant leave to conduct limited discovery, including depositions of **Matthew Miller** and **Brenden Phillips**, to test the

JOINT STATEMENT 24

veracity of extra-record declarations and the technical basis for the **93.8-foot geodetic shift** used to challenge Plaintiff's standing.

- ***In Camera* Review of Privilege Log Entries**: Order the production of entries **PR057– PR063** (the January 9, 2025, Draft Denial) and associated metadata for *in camera* review to determine if the Administrative Record is a **post-hoc rationalization** scripted prior to the evaluation of site-specific evidence.

- **Production of Technical Metadata**: Order the production of raw **GPS metadata** and software settings used by the Agency to manufacture its "non-existence" findings, which contradict the **NWP 10 Verification (Exhibit G)**.

Dated: January 5, 2026

_____Kent M. Bryan (Pro Se)

DATED:  January 5, 2026

Respectfully submitted,

TAHOE REGIONAL PLANNING AGENCY


By: /s/ Marsha A. Burch_____
Marsha A. Burch
Graham St. Michel
John V. Mensik
Attorney for Defendants, Tahoe
Regional Planning Agency
P.O.  Box 5310
Stateline NV 89449-5310
(775) 588-4547
mburch@trpa.gov

JOINT STATEMENT 25